**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

United States of America,					Case No. 3:17CR89

       Plaintiff

       v.							**ORDER**

Eugene Coley,

       Defendant


This is a criminal case in which the defendant stands indicted in a three-count indictment charging violation of the Hobbs Act, 18 U.S.C. § 1951(a), brandishing a firearm during the commission of the Hobbs Act violation, and having been a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

The charges arise from the defendant's alleged armed robbery in a parking lot of a Stop and Shop market in Toledo, Ohio. The fact that the indictment alleges that the proceeds of the robbery were the store's proceeds gives this Court jurisdiction under the Hobbs Act, as the robbery affected the interstate commerce in which the store is engaged.

Pending is the defendant's motion to dismiss, which seeks dismissal of the indictment on the basis of selective prosecution. (Doc. 33). The gravamen of the motion is that the government has brought this prosecution because the defendant is African-American.

In support of his selective prosecution challenge, the defendant asserts, for the period 2013 through 2017, inclusive: 1) data showing that none of the twenty-five Hobbs Act

defendants in our District was Caucasian;[1] 2) of arrestees booked into the Lucas County, Ohio, jail for robbery[2] or aggravated robbery,[3] 35% were Caucasian and 65% nonwhite; and 3) at least four Caucasians were charged in the Lucas County Court of Common Pleas with armed robbery of businesses.

## Discussion

The cornerstone case relative to the elements of a selective prosecution claim and a defendant's discovery motion is the Supreme Court's decision in *U.S. v. Armstrong*, 517 U.S. 456 (1996). In that case, the Court noted that the standard for proving selective prosecution is "a

---

[1] Twenty-four were African-American, one was Hispanic. I disagree with the government that the defendant's statistics painted a picture that was "simply untrue." The defendant explained in his initial brief why his statistics did not include a case involving two white defendants (the convictions did not occur until 2018, after the five-year window at issue), and his reply brief explains why a third case cited by the government, involving a defendant who was classified as white or Hispanic, was similarly not included. I was in no way misled by the defendant's statistical portrayal, which is truthful and accurate.

[2] O.R.C. § 2911.02 provides, in pertinent part:

(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
    (1) Have a deadly weapon on or about the offender's person or under the offender's control;
    (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
    (3) Use or threaten the immediate use of force against another.

[3] O.R.C. § 2911.01(A) provides, in pertinent part:

(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
    (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
    (2) Have a dangerous ordnance on or about the offender's person or under the offender's control;
    (3) Inflict, or attempt to inflict, serious physical harm on another.

demanding one," *id.* at 463, so that the defendant must "overcome the presumption of regularity by clear and convincing evidence." *United States v. Ali*, 1997 WL 219345, *2 (6th Cir. 1997).

To meet this difficult burden, the defendant must show that his prosecution had both a discriminatory effect and was motivated by discriminatory intent as to *his* case. *Armstrong*, 517 U.S. at 465; *United States v. Lawrence*, 735 F.3d 385, 439 (6th Cir. 2013) (citing *Armstrong*, supra, 517 U.S. at 465, and *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)).

In our Circuit, the defendant must establish three elements:

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, [the official] must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.
>
> *With regard to the first element, it is an absolute requirement that the plaintiff make at least a prima facie showing that similarly situated persons outside [his] category were not prosecuted.*

*Harajli v. Huron Twp.*, 365 F.3d 506, 508 (6th Cir. 2004) (emphasis in original) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000)).

Specifically, with regard to obtaining discovery, a selective prosecution movant must, the Supreme Court stated in *Armstrong*, "produce some evidence that similarly situated defendants of other races could have been prosecuted, but were not." 517 U.S. at 469.

I conclude that the defendant has met this threshold requirement: while he has been indicted in this Court, at least four Caucasians were charged in State court, though each had used a firearm to rob a business with an interstate nexus.[4]

---

[4] Those cases are not conclusive on the issue of discriminatory prosecution. I believe, however, that defendant's proof so far meets his initial burden of establishing a *prima facie*

3

Accordingly, I conclude that the defendant can obtain discovery on, *inter alia,* whether he and those four white State court defendants (and any others whom discovery may uncover) were similarly situated.[5]

The defendant has asked to do "discovery" generally, but has not specified what he has in mind with regard to what he wants to find out and how and from whom he expects or intends to find it out. That being so, the government is unable to formulate more than an equally general response – namely, that I should not allow any discovery.

At this point, a pretrial conference is necessary to learn what the defendant wants and to set, in light of the government's ensuing specific objections, parameters for the discovery. To that end, I will hold an in-person pretrial conference in early January, 2019.

Before the conference the parties shall meet and confer with regard to what the defendant wants and the government's response; the parties shall, in addition, file, not later than one week before the conference, a concise status report (or separate reports) stating areas of agreement and disagreement with, as to disagreements, brief supporting statements.

---

case. *U.S. v. Thorpe*, 471 F.3d 652, 657 (6th Cir. 2006) (defendant need not prove his case to obtain discovery).

[5] I leave open the question of what standard the defendant must meet to establish that he and the comparable white State court defendants were "similarly situated." *Compare*, *e.g.*, *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) ("substantially similar in all respects"), *with*, *e.g.*, *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) ("substantially similar . . . in all *relevant* respects") (emphasis in original). I disagree, in any event, with the defendant's contention that a comparison of the comparators' criminal histories with his criminal history is not relevant. On the contrary, such comparison is a highly relevant, if not the single most relevant, factor in determining whether he and they were "similarly situated."

In the course of working on this order, I have developed some thoughts for the parties' consideration. These are simply *tentative,* unilaterally-generated observations – they are not rulings on the scope of discovery that I may allow the defendant to undertake.

First: the charged robbery having occurred in Toledo, with the arresting officers being from the Toledo Police Department, should not the source of possible comparables likewise be Caucasians arrested by TPD officers and prosecuted in State court for robbery with a firearm?

Second: assuming the foregoing is correct, how did the defendant and his potential comparables come to the attention of the U.S. Attorney's Office; did any protocols or practices, written or unwritten, exist from 2013-17, inclusive, within the Toledo Police Department and/or the United States Attorney's Office; if so, who prepared those protocols and who implemented or oversaw the protocols or practices and what changes, if any, occurred along the way? (*I.e.*, how does the referral/acceptance/declination process function, or how did it function *vis-à-vis* the defendant and the comparators?).

Third: when, how, and by whom were and/or can the criminal histories of the defendant and comparators be ascertained; how will that information now be determined; what processes may be necessary to obtain access to non-public information (*e.g.,* presentence reports; records of nonappearance and probation/parole violations, etc.).

Fourth: what other possible sources of information re. the comparison between the defendant and comparators factors or factored into the referral/acceptance/declination decision?

Fifth: during the period of 2013-17, inclusive, how many referrals originated from the Toledo Police Department; what was the race of those prospective federal defendants, and what were their profiles re. criminal history and other pertinent factors, if any, on which the Toledo Police Department and U.S. Attorney's Office made their respective decisions?

Sixth: as to each referral during the period 2013-17, inclusive, who was accepted/declined for federal prosecution; what was the race of each of those individuals; do communications or records exist of the reasons(s) for referral/acceptance/declination?

Seventh, indicate, *inter alia,* and to the extent presently possible, who will be responsible for the acquisition and production of documents, etc., the timetable for completion of various tasks, hearing(s) (and their subjects, as needed), further briefing, and for completion of defendant's discovery re. his motion to dismiss, and, as to those matters as to which the parties have been unable to reach agreement.

To repeat: I offer the foregoing as subjects for the parties' consideration as they prepare for the meet and confer and the pretrial conference set herein. I do so without prejudice to the parties' right to object to these observations in whole or in part, or to their right independently to suggest other potential sources of pertinent information and related procedures and processes relevant to the issues the defendant's motion raises.

**Conclusion**

For the foregoing reasons, it hereby

ORDERED THAT:

1. A pretrial conference relative to defendant's motion to dismiss and the issues encompassed within this Order be, and the same hereby is, set for January 7, 2019 at 9:00 a.m.

2. Counsel for the parties shall forthwith meet and confer to prepare for that conference;

3. Not later than one week before that conference, the parties shall submit concise status report(s); and

4. The resulting delay hereby is excludable under the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(D) & (h)(7)(A), due to the pendency of the defendant's motion to dismiss and to enable the parties to comply with this order, and so that the defendant may enjoy fully his Sixth Amendment right to counsel.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge