# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

United States of America,   Case No. 3:17CR89

    Plaintiff

    v.   **ORDER**

Eugene Coley,

    Defendant

Pending is the government's motion to set a trial date (Doc. 76), filed December 19, 2019. For the reasons that follow, I deny the motion.

The gravamen of the government's motion is that the delay since the defendant's indictment – 1,050 days as of the date of this order since return of the indictment – is jeopardizing defendant's constitutional and statutory rights to a speedy trial. The government also expresses concern with the public's right to a speedy trial. (Doc. 76, PageID 1161–62).

The defendant, through his counsel (the Federal Public Defender), who bears primary responsibility for protecting all the defendant's constitutional and statutory rights, and always zealously does so, does not agree. Indeed, counsel describes the motion as "premature." (Doc. 77, PageID 1165).

That alone should suffice to ease the government's concerns and permit overruling its motion without further ado or discussion.

In any event, I agree with defense counsel, who have filed a motion to dismiss on the basis of race-based selective prosecution. (Doc. 33). This is, of course, a very serious assertion as to the basis for charging the defendant, who is African-American. (Doc. 33).

The impetus for the defendant's motion is that from 2013 through 2017, the government brought twenty-five prosecutions under the Hobbs Act, 18 U.S.C. § 1951(a),[1] in this Division of our District. (Doc. 33–1, PageID 646). Twenty-four of those defendants were, like Coley, African-American; the other was Hispanic. (*Id.*). None was Caucasian. (*Id.*).

In response to the defendant's motion, the government justifies this noteworthy statistic on the basis that only the worst of the worst of those whom the Toledo Police Department (TPD)[2] arrests for gas station/convenience store/etc. armed robberies wind up as federal Hobbs Act defendants. (Doc. 36, PageID 684–85; *see also* Doc. 49, PageID 790).

As the United States Attorney, Justin Herdman, himself pointed out at a hearing on January 7, 2019, the 100% non-white profile of those whom the government deems the worst of the worst is not enough to make out a cognizable case of selective prosecution. Mr. Herdman is correct: as the cases make clear, proving that racial or ethnic bias played a role in a prosecution is very difficult:

> A defendant seeking to prove selective prosecution must show that prosecutorial policy had a discriminatory effect and purpose. *United States v. Armstrong*, 517 U.S. 456, 465 (1996); *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). "To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." *Armstrong*, 517 U.S. at 465. Such a defendant "must prove that the decisionmakers in *his* case acted with discriminatory purpose." *McCleskey*, 481 U.S. at 292; *see also United*

---

[1] The Hobbs Act, 18 U.S.C. § 1951, prohibits and penalizes robbery that "obstructs, delays, or affects" interstate commerce.

[2] The government has represented that referrals for Hobbs Act prosecutions come from the TPD, and that the U.S. Attorney's Office independently screens those referrals before seeking an indictment. (Doc. 36, PageID 669–70).

> *States v. Bass*, 536 U.S. 862, 864 (2002) (holding that "raw statistics regarding overall charges say nothing about charges brought against *similarly situated defendants*." (italics in original)); *Keene v. Mitchell*, 525 F.3d 461, 464 (6th Cir. 2008) (holding that statistics indicating a disparity between the percentage of African Americans in the general population and the percentage charged with capital murder, standing alone, failed to demonstrate that race played a part in the defendant's prosecution and sentencing as required by *McCleskey*).

*U.S. v. Lawrence*, 735 F.3d 385, 439 (6th Cir. 2013)

The government's motion fails to acknowledge the existence of this daunting and difficult standard.

For their part, defense counsel, in addition to calling the motion premature, assert they have been diligently working to develop essential evidence sufficient to prevail on their motion. The government has resisted these efforts. It opposed the defendant's motion for discovery (Doc. 43, PageID 753–54), a considerable portion of which I ultimately directed the government to file under seal. (Doc. 51). That course of events consumed about ten weeks.

As *Lawrence*, *supra*, makes clear, the defendant has to show that white individuals with similar "worst of the worst" criminal backgrounds – *i.e.*, whites potentially "eligible" for Hobbs Act prosecution – were not selected for such prosecution, but remained in state court. To develop a cadre of white comparators, defense counsel need to learn the identities and criminal histories of such white "candidates" (if any).

Having, through publicly available sources, identified potential comparators, the best – indeed, the only – way to learn their criminal histories was for defense counsel to review the presentence investigation (PSI) reports of each comparator. Those reports are not publicly available; instead, each Judge has the PSIs generated from his or her docket. When the Judges declined, despite the willingness of defense counsel to preserve confidentiality, to produce those reports voluntarily, defense counsel issued subpoenas for their production. (Doc. 56).

The Judges filed a motion to quash. (Doc. 68), which I overruled shortly before becoming aware of the pendency of the instant motion (Doc. 81).

Between them, the motion for discovery from the government and the issue of the subpoenas to the judges consumed nearly half a year.

The government suggests that this is a simple run-of-the mill stickup case. Perhaps so, had the case remained in state court. Now that the case is here, and presents the issue that it does, that viewpoint is far too narrow, and overlooks what is at stake for all concerned.

For the defendant, the chances are that, if convicted here, he will spend a lot more time in prison than had he remained a state court defendant.

The stakes are just as great for the government, which, if the allegation of race- and ethnicity-based selective prosecution is established, will stand, at best, complicit in a reprehensible exercise of discretion.

The outcome of this case is important to the public – and its importance goes far beyond wanting a speedy trial and timely verdict. It is more important that the public have confidence that the government and those who work with and for it are race-blind. In the end, this case is about whether, in this instance, that confidence is merited.

**Conclusion**

To set a trial date now would be a vain exercise, leading to no certainty.

This is because what comes next, and how much time it will take, depend on what the defendant's attorneys' next evidence-gathering steps, if any, will be – and the extent to which the government will oppose the taking of those steps.

I will see to it that what needs to be done is done as promptly as possible, and with full cognizance of the importance of the issues involved and interests at stake.

It is, accordingly, hereby

ORDERED THAT

1. The government's motion to set a trial date (Doc. 76) be, and the same hereby is, denied.

2. The Clerk shall forthwith schedule a status conference; the parties shall confer as to what remains to be done for the pending motion to dismiss to become decisional and file a status report(s) not later than two weeks before the conference.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge